Timothy J. ESSLING, Petitioner

v.

The PEOPLE of the State of Colorado, Respondent.

No. 13PDJ068.

Office of the Presiding Disciplinary Judge of the Supreme Court of Colorado.

Feb. 28, 2014.

**OPINION AND DECISION DENYING
REINSTATEMENT PURSUANT
TO C.R.C.P. 251.29(e)**

On January 21, 2014, a Hearing Board comprised of attorney JOHN M. LEBSACK, citizen member BARBARA A. MILLER, and the Presiding Disciplinary Judge, WILLIAM R. LUCERO ("the PDJ"), held a reinstatement hearing pursuant to C.R.C.P. 251.29(d) and 251.18. Timothy J. Essling ("Petitioner") appeared pro se, and Gregory G. Sapakoff appeared as a special prosecutor on behalf of the Office of Attorney Regulation Counsel ("the People"). The Hearing Board now issues the following "Opinion and Decision Denying Reinstatement Pursuant to C.R.C.P. 251.29(e)."

## I. *SUMMARY*

Petitioner knowingly neglected three client matters over a period of three years, causing the statute of limitations to run on one client's personal injury claim. Petitioner then failed to adequately communicate with another of those clients and knowingly dis-

obeyed a court order. Based on this misconduct, Petitioner was suspended from the practice of law for one year and one day, all but six months stayed upon the successful completion of a two-year period of probation. Almost five years later, he petitioned for reinstatement to the bar. The Hearing Board finds that Petitioner has not proved by clear and convincing evidence that he has substantially complied with all applicable disciplinary orders, that he is rehabilitated, or that he is fit to practice law. The Hearing Board thus concludes Petitioner should not be reinstated to the practice of law.

## II. *PROCEDURAL HISTORY*

Petitioner took the oath of admission and was admitted to the bar of the Colorado Supreme Court on May 25, 1983, under attorney registration number 12785. On September 4, 2008, the PDJ approved a conditional admission of misconduct and suspended Petitioner from the practice of law for one year and one day, with all but six months stayed upon the successful completion of a two-year period of probation with conditions.[1] His suspension took effect September 9, 2008.[2]

On September 5, 2013—almost five years after he had been suspended—Petitioner filed his petition for reinstatement pursuant to C.R.C.P. 251.29(b). The People filed an answer on September 25, 2013.

During the reinstatement hearing held on January 21, 2014, the Hearing Board heard testimony from Petitioner[3] and considered stipulated exhibits 1–3.

## III. *FINDINGS OF FACT*

### Petitioner's Prior Discipline

Dustin Erickson was in a car accident in February 2003, which caused him to suffer from temporomandibular joint syndrome.[4] Petitioner and Erickson were friends and roommates from August 2005 to January 2007.[5] Petitioner filed a complaint on Erickson's behalf on February 6, 2006, the last day before the statute of limitations on his personal injury claim expired.[6] Petitioner never provided the district court, however, with proof of service of the complaint.[7] Pursuant to the court's delay reduction order, Petitioner was to file the proof of service within thirty days, and failure to do so would result in dismissal of the complaint.[8]

Petitioner did not adequately communicate with Erickson about his case. He performed little to no work on the case, leading to its dismissal in January 2007 for failure to prosecute and to comply with the delay reduction order.[9] By the time Erickson's case was dismissed, the statute of limitations had run on his personal injury claim, causing him harm.[10] Petitioner did not notify Erickson of the dismissal; rather, Erickson eventually learned from the court's clerk that his case had been dismissed.[11]

In the fall of 2005, Odie Webster retained Petitioner to represent him in a criminal matter pending in federal court.[12] Before then, on February 25, 2005, the United States District Court for the District of Colo-

---

1. Stip. Ex. 2.

2. Stip. Ex. 2.

3. Petitioner did not call any witnesses to testify on his behalf. The People sought to introduce testimony regarding Petitioner's conduct in this reinstatement matter from Geanne R. Moroye of the Office of Attorney Regulation Counsel, who prosecuted this matter before Mr. Sapakoff's appointment. The PDJ precluded the People from calling this witness, deeming her testimony unnecessary because the PDJ could take judicial notice of Petitioner's failure to follow orders in this proceeding.

4. Stip. Ex. 1 at 3 ¶ b.

5. Stip. Ex. 1 at 3 ¶ a.

6. Stip. Ex. 1 at 3 ¶ c.

7. Stip. Ex. 1 at 3 ¶ d.

8. Stip. Ex. 1 at 3 ¶ e. In the parties' stipulation, Petitioner claimed he never received this order but nevertheless admitted he failed to comply with it.

9. Stip. Ex. 1 at 3 ¶¶ f-h.

10. Stip. Ex. 1 at 3–4 ¶ j.

11. Stip. Ex. 1 at 3 ¶ i.

12. Stip. Ex. 1 at 4 ¶ m.

rado had entered a general order requiring all attorneys practicing in that court to register as participants in its Electronic Case Filing Procedures ("ECF") by December 5, 2005.[13] Petitioner had no other cases in federal court but knew ECF registration was mandatory.[14] Nevertheless, Petitioner failed to register for ECF. On January 4, 2006, Webster entered a guilty plea to mortgage fraud. His sentencing hearing was set for December 18, 2006.[15] In July 2006, Webster filed a pro se motion asking the federal court to appoint a new attorney for him because Petitioner had failed to register for ECF.[16] The court denied Webster's motion and ordered Petitioner to register for ECF within thirty days, which he failed to do.[17] Petitioner did not attend Webster's sentencing hearing in December 2006, which caused the judge to continue the hearing and appoint new counsel to represent Webster.[18]

In a third matter, Petitioner failed to attend a motions hearing he was scheduled to appear at on May 21, 2008, in a case styled *Jodie Thein v. Shelby Thein,* Douglas County District Court, case number 05DR291, leading the court to award attorney's fees against him.[19] Petitioner did not file a motion to continue the motions hearing, nor did he inform the court that he would not attend.[20]

In his disciplinary case, Petitioner stipulated that he knowingly neglected Erickson, Webster, and Thein in violation of Colo. RPC 1.3. He also stipulated that he violated Colo. RPC 1.4(a) by failing to adequately communicate with Webster and Colo. RPC 3.4(c) by failing to register for ECF.[21] He was suspended for a period of one year and one day, all but six months stayed upon the successful completion of a two-year period of probation with conditions, effective September 9, 2008.[22] The stipulation also set forth Petitioner's history of prior discipline involving three separate instances of neglecting client matters and one instance of failing to follow a court order.[23]

The stipulation required Petitioner to pay costs of $948.48 within six months of the order approving the stipulation. He was also to register for and take the one-day ethics school sponsored by the People within one year.[24] Petitioner did not satisfy either condition within the time period specified, nor did he file for an extension of time within which to complete these tasks. Petitioner eventually completed the one-day ethics course on June 10, 2011,[25] and on September 4, 2013, he paid all of the outstanding costs, plus interest.[26]

The order approving the stipulation also required him to comply with C.R.C.P. 251.28,

---

**13.** Stip. Ex. 1 at 4 ¶¶ k-l, n.

**14.** Stip. Ex. 1 at 4 ¶ n.

**15.** Stip. Ex. 1 at 4 ¶ o.

**16.** Stip. Ex. 1 at 4 ¶ p.

**17.** Stip. Ex. 1 at 4 ¶ p. In the parties' stipulation, Petitioner claimed he never received this order, although he admitted that he was required to register for ECF and failed to do so. Stip. Ex. 1 at 4–5 ¶¶ p-q.

**18.** Stip. Ex. 1 at 5 ¶ r.

**19.** Stip. Ex. 1 at 5 ¶ s.

**20.** Stip. Ex. 1 at 5 ¶ t. Petitioner claimed in the stipulation that debilitating pain prevented him from attending the hearing. Stip. Ex. 1 at 5 ¶ u.

**21.** Colo. RPC 1.3 provides that a lawyer "shall act with reasonable diligence and promptness in representing a client." Colo. RPC 1.4(a) states that a lawyer shall keep a client reasonably informed about the status of a matter. Colo. RPC

3.4(c) prohibits a lawyer from knowingly disobeying the rules of a tribunal.

**22.** Stip. Ex. 2.

**23.** In October 1991, Petitioner was privately admonished for repeated failures to file and timely handle a client's bankruptcy proceeding. Stip. Ex. 1 ¶ 11. He was then publicly censured in 1995 for neglect of a legal matter. Stip. Ex. 1 ¶ 11. In July 1999, Petitioner was suspended for one year and one day, all stayed during a one-year period of probation, for abandoning a client and for failing to withdraw from his client's case. Stip. Ex. 1 ¶ 11. Finally, in 2003, he was again suspended, this time for sixty days, all stayed upon a one-year period of probation, for violating Colo. RPC 3.4(c). Stip. Ex. 1 ¶ 11.

**24.** Stip. Ex. 2.

**25.** Stip. Ex. 3.

**26.** People's Hr'g Br. at 2 (agreeing that Petitioner paid all of his outstanding costs on September 4, 2013).

by filing an affidavit with the PDJ attesting that he had given notice of his suspension to parties in pending matters and to other jurisdictions where he was licensed.[27] At the time, Petitioner was licensed to practice in Indiana and in the United States District Court, District of Colorado. Petitioner did not file the required C.R.C.P. 251.28 affidavit.

Petitioner's two-year probationary period was to begin after he served his six-month suspension and filed an affidavit for reinstatement under C.R.C.P. 251.29(b).[28] Although Petitioner could have filed for reinstatement following the served portion of his suspension, he did not and thus has remained suspended for over five years.[29]

### Petitioner's Testimony

Petitioner testified that he grew up in a small town in Indiana, where his parents ran a local funeral home. His father instilled in him the value of assisting people in need. His father strongly believed that all people are entitled to bury their loved ones no matter their financial position. As a result, his father helped to finance fifteen to twenty percent of the funerals he arranged.

As a young man, Petitioner was actively involved with his community. While in high school he acted as the high school liaison with the local blood bank. He facilitated a blood donation program between the high school, local college students, and the blood bank. While in college in Indiana, Petitioner became involved with Habitat for Humanity and was the coordinator for the volunteer student bureau.

Petitioner moved to Denver in the early 1980s. When he first settled in Colorado, Petitioner made a living driving a taxi and practicing law. For a period of time, he drove a cab on nights and weekends. As a nighttime cab driver, Petitioner was exposed

to a "different slice of life." Through this work, he met and agreed to assist many people who were unable to pay for the legal help they needed. He would meet potential clients in the early morning hours in various coffee shops, where they would discuss their legal matters. Eventually, Petitioner set up a small solo practice in Cherry Creek, office-sharing with a non-lawyer.

Because his father taught him to assist those in need, he chose to represent "risky, really hard, and dangerous" clients, as he described them. He testified that during his legal career he dealt with a fair number of disciplinary issues as a result of his "difficult and problematic" clientele, and he stated that he has paid a "terrible price" for his commitment to the underserved, noting that throughout his professional life much of his work has gone unappreciated. He stated that although some attorneys and judges have recognized the value in his chosen career path, he was unable to secure their testimony at his reinstatement hearing.

Petitioner described Erickson's case as one in which his failure to withdraw from representation caused his ethical lapses. He testified that when he agreed to represent his friend, his law office was closed and he had no resources. He and Erickson were living on Petitioner's back porch and using the electricity from an upstairs neighbor via an extension cord to power the refrigerator and their cell phones. He recalled telling Erickson that he did "not do" personal injury law and that Erickson needed to hire another lawyer. Petitioner filed Erickson's civil complaint the day before the statute of limitations expired but continued to instruct Erickson to obtain new counsel because he could not handle the case. Looking back, Petitioner knows he should have withdrawn from representing Erickson. However, Petitioner feels that his suspension was Erickson's

---

27. Stip. Ex. 2.

28. Stip. Ex. 2; C.R.C.P. 251.29(b) ("[A]n attorney who has been suspended for a period of one year or less shall be reinstated by order of the Presiding Disciplinary Judge, provided the attorney files an affidavit with the Regulation Counsel within 28 days prior to the expiration of the period of suspension, stating that the attorney

has fully complied with the order of suspension and with all applicable provisions of this chapter.").

29. Petitioner testified that he did not apply for reinstatement by affidavit after his six-month suspension because he did not have the funds to satisfy the conditions of his stipulation.

fault. Petitioner believed that Erickson lodged a complaint against him because Erickson's grandfather, who was wealthy and controlling Erickson's "purse strings," compelled him to do so. He believes that Erickson did not want to be "seen as an idiot" and thus had to blame Petitioner for his case being dismissed. Petitioner agrees that he should have handled the matter better, but he insists that Erickson was not a victim. Petitioner concedes only that he should have withdrawn, but he fails to acknowledge that it was his noncompliance with the court's delay reduction order and his neglect of Erickson's case that caused Erickson's case to be dismissed.

Petitioner also testified that he should have withdrawn from Webster's case but lacked the ability to do so because he had not registered for ECF. At the time Petitioner took the case, he was sharing an office with a non-lawyer and was not set up to handle criminal litigation. Petitioner stated that he told Webster he would represent him only at his plea hearing and only if he were to plead guilty. Webster paid Petitioner $1,000.00 for his services, but Petitioner never gave Webster a written fee agreement; he insisted that Webster was aware of the limited terms of the representation, and he contended that he repeatedly told Webster to hire another lawyer who was familiar with federal sentencing guidelines. Petitioner stated that he tried on many occasions to withdraw from Webster's case but the federal court clerks refused to assist him. He admitted that he failed to appear for a hearing and failed to withdraw properly but was adamant that Webster suffered no injury. Absent from Petitioner's testimony was any acknowledgment of his neglect of Webster's case, or his failure to adequately communicate with Webster.

Petitioner expressed remorse for his behavior in the Erickson and Webster cases but admitted only limited culpability as to the dismissal of Erickson's case and the continu-ance of Webster's sentencing hearing. He was firm that in neither case should the blame be placed on him alone. He also suggested that because his willingness to represent these clients demonstrate a lack of self-serving behavior on his part, it is "ironic" that he was disciplined for either matter.[30]

Petitioner testified that he was unable to pay the costs ordered by the PDJ due to financial hardship; he admitted, however, that he did not set up a payment plan with the People, and he also admitted that he loaned $450.00 to a heroin addict during this period, in an effort to help the addict get back on his feet. Likewise, he testified that he was unable to attend ethics school because he could not afford the registration fee. He further stated that he independently determined that he did not need to file an affidavit under C.R.C.P. 251.28(d) or notify Indiana or the federal court in Colorado, of his suspension because he had "abandoned" his practice in Indiana and because the order of suspension was sent to the federal court in Colorado, as indicated on the PDJ's certificate of mailing.[31]

During his suspension, Petitioner has not worked with any regularity, nor has he earned a consistent income. It appears that he has not been able to keep a steady residence either. He testified that he was employed briefly in August 2008 with a landscaping company, where he drove workers to and from job sites. On two occasions, he was able to exchange care giving for housing. He tried to drive a cab again in 2010, but he found it difficult to make a living. He also made some money assisting a heroin addict with a grant proposal and received a $1,500.00 payment from another person for conducting legal research and helping draft a civil rights complaint.[32] He described it as "stigmatizing to be a suspended lawyer" and complained that he was unable to even secure a menial job. He said he lost his car,

---

30. Petitioner did not address his misconduct in the Thein matter.

31. There is no indication on the PDJ's certificate of mailing that the State of Indiana was sent the notice of Petitioner's suspension. Stip. Ex. 2.

32. Petitioner insists that in both of these matters, he conducted no legal work and made his clients aware of his suspension from the practice of law.

his suits, and his boots during his period of suspension.

Since 2008, Petitioner has completed only eight credits of continuing legal education ("CLE"), and these were earned during the required one-day ethics course he took in 2011.[33] He stated that he has finished five to twelve CLE home studies but has received no CLE credit because he was unable to access the video segments. Petitioner testified that he kept current with his legal education during his period of suspension by frequenting courthouses in Jefferson, Arapahoe, and Denver counties. There, he said, he observed attorneys and judges and kept up with relevant legal principles. He has also spent some time advising people on how to prepare for custody hearings. He describes himself as a voracious reader, reading sometimes a dozen books a month, as well as newspapers and legal periodicals.

Also during his period of suspension, Petitioner wrote a four-hundred page novel, which he anticipates will be published in the near future.

Although he said he was involved with his community while living in Indiana, he testified that he has been unable to conduct any formal community service during his suspension because he has been trying to "sustain" himself and those who have helped him.

During these reinstatement proceedings, Petitioner failed to follow the PDJ's at-issue conference order, which required him to file a prehearing brief, a memorandum of legal authority, an exhibit list, and a witness list. Petitioner testified that he was unable to present any character witness testimony at the hearing because the kind of people he spends time with would not want to come to a courthouse to talk to a judge.

Petitioner stated that if the Hearing Board reinstated his law license, he would not want to practice litigation as he previously did nor would he have the same clientele. He envisions himself consulting or advising people, rather than conducting a busy litigation practice. Petitioner also commented that if he were reinstated he would not object to working with a practice monitor or to any other conditions the Hearing Board might impose. He would acquiesce to serving a probationary period in order to bring his CLE credits current.

## IV. LEGAL ANALYSIS

As an attorney who has been suspended for longer than one year, Petitioner must prove by clear and convincing evidence three things in order to be reinstated to the Colorado bar: that he has been rehabilitated, that he is fit to practice law, and that he has complied with all applicable disciplinary orders and rules.[34] Failure to prove even one requirement is fatal to Petitioner's reinstatement.[35] In considering Petitioner's case, the Hearing Board must consider Petitioner's past disciplinary record.[36]

The People argue against reinstatement, contending that Petitioner has failed to meet his burden with respect to all three requirements and that the evidence raises doubt as to whether he is able to practice law without again neglecting his clients, communicating inadequately with them, or disregarding court orders. In their closing argument, the People asserted that Petitioner spent much of his testimony trying to convince the Hearing Board that his actions in the underlying cases did not warrant punishment and that his former clients were equally, if not more, responsible for his discipline. In addition, the People expressed concern that Petitioner failed to evince a different outlook or a change in character substantial enough to provide any comfort that he would not, if reinstated, neglect cases or ignore court orders. They contend that the public would not be adequately protected if Petitioner were allowed to resume the practice of law. The Hearing Board agrees.

### Compliance with Applicable Disciplinary Orders and Rules

An attorney seeking reinstatement must provide evidence of compliance "with all

---

33. Stip. Ex. 3.

34. C.R.C.P. 251.29(b).

35. *In re Price,* 18 P.3d 185, 189 (Colo.2001).

36. C.R.C.P. 251.29(e).

applicable disciplinary orders and with all provisions of [Chapter 20]...."[37] Technical violations of such disciplinary orders do not always preclude reinstatement,[38] but critical to the analysis is the nature of the violations.[39]

Petitioner's petition for reinstatement certifies that he has complied with applicable orders and rules. Yet the evidence shows that after he was suspended, Petitioner failed to file his affidavit pursuant to C.R.C.P. 251.28. Petitioner gave no explanation other than that he did not think it was necessary to file the affidavit because his law practice was shut down. He also stated he was under the impression that he need not notify the Indiana bar or the federal court in Colorado, of his suspension, because he believed those courts had received the order of suspension. The Hearing Board finds it troubling that Petitioner failed to comply with the PDJ's order of suspension and with the applicable rules governing suspended lawyers. That Petitioner did not comply with these requirements is additional evidence of his unwillingness to address one of the professional deficits that led to his suspension in the first instance—failing to follow court orders. He then continued to engage in a similar pattern of ignoring court orders when he failed to file his prehearing materials in the reinstatement proceedings, as directed by the PDJ's at-issue conference order.

Petitioner delayed substantially in complying with the order requiring him to pay costs and attend ethics school, contending a financial hardship prevented him from doing so earlier. Although we believe Petitioner's testimony about his financial hardship, the better practice would have been for him to arrange a payment plan or an extension of time within which to satisfy these conditions. For reasons unknown, he chose not to pursue this path.

Under different circumstances, Petitioner's noncompliance with applicable disciplinary orders and rules might be considered a mere technical violation. But considering Petitioner's ongoing refusal to comply with court orders, we do not find a technical violation; rather, we find that Petitioner has not substantially complied with this requirement.

### Rehabilitation

 Inherent in the imposition of discipline upon an attorney is a finding of some professional or personal shortcoming. The shortcoming may result from personal deficits exclusively or from a combination of personal deficits, professional deficits, and environmental challenges. The Hearing Board's analysis of rehabilitation is therefore directed to examining the shortcomings that resulted in Petitioner's suspension in order to ensure protection of the public welfare.

In this case, Petitioner's discipline was premised upon his neglect of clients, his failure to adequately communicate with a client, and his disregard of court orders. Based upon the evidence presented, we determine that Petitioner's professional shortcomings stemmed from his lack of organization in managing his cases. He also represented clients in cases where he lacked the necessary organizational skills and legal knowledge. His belief that he needed to assist anyone in need of legal help caused him to overreach professionally and accept cases he was not prepared to handle. Such conduct raises questions about Petitioner's follow-through, diligence, and communication. We therefore focus on these professional shortcomings in analyzing Petitioner's rehabilitation.

 We are guided by the leading case of *People v. Klein,* which enumerates several considerations in evaluating whether an attorney has been rehabilitated and is thus qualified for reinstatement.[40] These factors are: character; conduct since the imposition of the original discipline; professional competence; candor and sincerity; recommendations of other witnesses; present business

---

37. C.R.C.P. 251.29(b).

38. *Price,* 18 P.3d at 191.

39. *Id.*

40. 756 P.2d 1013, 1015–16 (Colo.1988) (interpreting the language of C.R.C.P. 241.22, an earlier version of the rule governing reinstatement to the bar).

pursuits; personal and community service aspects of the petitioner's life; and recognition of the seriousness of the previous misconduct.[41] The *Klein* criteria provide a benchmark to assess whether an attorney has been rehabilitated[42] such that there is little likelihood the attorney will repeat in the future the misconduct that led to the attorney's suspension. Ultimately, each petition for reinstatement must be reviewed on its own merits and must fail or succeed on the evidence presented and the circumstances peculiar to the case.[43]

We first turn to Petitioner's candor and sincerity, his character, and his recognition of the seriousness of his previous misconduct. The Hearing Board finds that Petitioner's testimony, coupled with his manner and demeanor on the witness stand, suggest that he has experienced great personal hardship over the past five years, including enduring substandard living conditions, failing to find employment, and losing many of his personal belongings. We do not doubt that he has suffered both personally and financially. Further, we admire Petitioner's willingness to help indigent people with significant legal needs, as this type of legal work is not often undertaken or easily accomplished. However, Petitioner presented no evidence demonstrating that he has successfully addressed the professional deficits leading to his suspension in a manner that will ensure protection of the public. Indeed, it is telling that Petitioner was unable to find even one character witness to testify on his behalf. Based on Petitioner's presentation, the only evidence before the Hearing Board relating to these criteria is Petitioner's own testimony that he is now rehabilitated because he no longer has the resources to his former clientele. These conclusory statements simply do not meet the clear and convincing standard.[44]

Because Petitioner believes that his failure to withdraw from his clients' cases led to his discipline, he takes little responsibility for the true reasons for his suspension—his neglect of these cases and his failure to follow court orders. He glosses over his admitted misconduct that led to his suspension. Although Petitioner stated that he in no way sought to minimize his culpability, it is troubling that after five years Petitioner believes his disciplinary problems were merely a result of his "difficult and problematic clientele" and his failure to withdraw from cases. Given the evidence presented, we do not conclude that Petitioner has taken responsibility for his mistakes or undergone a real and meaningful transformation in his character and state of mind since his misconduct. For this reason, we cannot find that he is unlikely to repeat his past mistakes.

Next, we focus on Petitioner's professional competence and present business pursuits. We have determined that Petitioner's misconduct arose from the mismanagement of his cases, poor communication with his clients, and failure to comply with court orders. The evidence does not establish that Petitioner has overcome these shortcomings. Of note, Petitioner's prior disciplinary history, which we must consider, is largely premised upon the same type of misconduct— neglect of client matters. From 1999 to 2005, Petitioner engaged in a repeated pattern of neglect.

Petitioner has not held a paid position, engaged in volunteer work, or enrolled in any relevant courses during his suspension that would lead us to believe he has been able to improve his client communication or organizational skills. Although Petitioner indicated that he has no intention of litigating cases, he did not articulate how he foresees achieving his consulting goal or how he would manage his law practice differently in the future.

---

41. *Id.* at 1016.

42. Rehabilitation has been defined as "the reestablishment of the reputation of a person by his or her restoration to a useful and constructive place in society." *In re Cason*, 249 Ga. 806, 294 S.E.2d 520, 522–23 (1982).

43. *See In re Cantrell*, 785 P.2d 312, 314 (Okla. 1989).

44. *See Milligan v. Bd. of Prof'l Responsibility of Supreme Court of Tenn.*, 301 S.W.3d 619, 634 (Tenn.2009) (finding conclusory statements made by an attorney regarding his remorse and rehabilitation were insufficient proof of rehabilitation).

His testimony does not evince a significant and meaningful change in his state of mind and his skills. Thus, he has not shown how he has been rehabilitated from the problems that previously plagued his practice.

Finally, although Petitioner engaged in community service during his high school and college years, he did not present any evidence that he performed community service during his suspension. Although he stated that he acted as a caregiver for two individuals while he was suspended, he did so in exchange for housing. He also presented the Hearing Board with few details about the duration of these jobs or his responsibilities as a caregiver.

Considering the totality of the evidence and testimony presented, the Hearing Board concludes that Petitioner has not proved his rehabilitation by clear and convincing evidence.

### Fitness to Practice Law

Whether an attorney seeking reinstatement of his or her law license is fit to practice law requires a broader analysis than the inquiry concerning rehabilitation. Even though a petitioning attorney may be rehabilitated from those events or conditions that precipitated the original discipline, other factors may yet indicate the attorney is not fit to practice law.

In this case, we cannot find that Petitioner maintained his professional competence while suspended. He did not complete any CLE coursework for credit other than the required ethics course.[45] Further, Petitioner did not produce any documentary evidence or testimony regarding his professional competence. Indeed, it appears that during his suspension Petitioner made little effort to work in a structured environment where he could develop stronger skills. In short, he has not demonstrated any improvement in his communication or organizational skills since his suspension. Petitioner's testimony that he has been read legal periodicals and observed court proceedings falls short of proving that Petitioner now has the legal skills and knowledge necessary to practice law after a five-year absence.

Thus, we cannot find that Petitioner has demonstrated he possesses the requisite professional competence to again practice law. Accordingly, we conclude that Petitioner should not be reinstated to the Colorado bar.

## V. CONCLUSION

Petitioner has failed to demonstrate by clear and convincing evidence that he has reformed his attitude and addressed the shortcomings that led to his prior misconduct. He has presented no evidence satisfying many of the *Klein* factors, has not demonstrated that he has undergone a genuine change in character that will ensure protection of the public, and was unable to show that he has maintained his professional competence over the past five years. Therefore, the Hearing Board **DENIES** Petitioner's petition for reinstatement.

## VI. ORDER

1. The Hearing Board **DENIES** Petitioner's "Petition for Reinstatement." Petitioner **TIMOTHY J. ESSLING,** registration number 12785, **SHALL NOT** be reinstated to the practice of law.

2. Pursuant to C.R.C.P. 251.29(i), Petitioner **SHALL** pay the costs of these proceedings. Petitioner has paid the People a $500.00 cost deposit. The People **SHALL** submit an accounting of the costs of these proceedings to Petitioner **within seven days** of the date of this order. Any portion of the cost deposit unexpended **SHALL** be returned to Petitioner **within fourteen days** of the date of this order. Petitioner **SHALL NOT** be responsible for costs exceeding the $500.00 cost deposit.

3. Petitioner **SHALL** file any post hearing motion with the Hearing Board **on or before Friday, March 14, 2014.**

---

45. His testimony that he kept abreast of legal principles by advising people how to prepare for custody hearings and by helping a person to conduct legal research and to draft a civil rights complaint is disconcerting, as such conduct may have constituted the unauthorized practice of law.

No extensions of time will be granted. If Petitioner files a post hearing motion, any response thereto **SHALL** be filed within seven days, unless otherwise ordered by the PDJ.

4. Petitioner has the right to appeal the Hearing Board's denial of his petition for reinstatement pursuant to C.R.C.P. 251.27.

5. Petitioner **SHALL NOT** be entitled to petition for reinstatement within two years of the date of this order.[46]